## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM O. SPIVEY, #K-81482,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 11-cv-327-JPG** |
| | ) | |
| **CHAPLAIN LOVE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate currently in the Menard Correctional Center, filed the instant action while he was housed in the Pinckneyville Correctional Center. Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's original complaint, a portion of which is reviewed below, was filed on August 31, 2010, under Case Number 10-cv-689.  That complaint contained many unrelated claims brought against a number of Defendants.   On March 1, 2011, this Court informed Plaintiff that it would sever the unrelated claims in his complaint into new suits unless he dismissed those claims.  When Plaintiff failed to dismiss the claims, the Court severed them, which resulted in the instant action being opened before the Court on April 20, 2011 (*see* Doc. 1).

The Court reviewed the claims asserted in the instant action, and determined that more information was needed.  On November 21, 2011, the Court ordered Plaintiff to file an amended complaint, providing the missing information the Court needed to perform a thorough review of the claims.  Plaintiff filed his amended complaint on December 5, 2011 (Doc. 9), and it is this amended complaint that the Court reviews in this order.

Upon careful review of the complaint and any supporting exhibits, the Court finds that a portion of the claims in this amended complaint are subject to dismissal.

**Facts:**

Plaintiff was transferred to Centralia Correctional Center on March 11, 2010.  Sometime between that date and May 10, 2010, Plaintiff requested that Defendant Love, the prison chaplain, change Plaintiff's religious status which had been incorrectly noted in Plaintiff's file as Protestant, when Plaintiff is in fact Jewish.  This request was ignored by Defendant Love.

Plaintiff was transferred to Pinckneyville Correctional Center on June 9, 2010.  Sometime

between that date and February 16, 2011, Plaintiff requested that Defendant Sutton, the prison chaplain, change his religious status, which was still incorrectly noted as Protestant. This request was denied. Plaintiff also asked Defendant Sutton to change his diet to a vegetarian diet to accommodate his religion, but Defendant Sutton refused this request, saying he could not make the change until Plaintiff's religious status had been changed. Plaintiff sent requests for intervention to Defendant Scheimann, the prison rabbi, but these requests went unanswered.

Plaintiff was transferred to Menard Correctional Center on February 16, 2011. Sometime after that date, Plaintiff notified Chaplain Harner[1] that he still needed his religious status changed. Chaplain Harner sent Plaintiff a form to fill out. Plaintiff filled out this form, and put it in his mailbox. Defendants Cox and John Doe Second Shift Officers (SSOs) collected this form, but apparently did not give it to Chaplain Harner. Chaplain Harner later came to Plaintiff's cell and said he would "take care of" the matter of getting Plaintiff's religious status changed, but nothing was done.

Plaintiff was then moved to a new cell. In the process of the move, Defendant Livingston and Defendant Fleming confiscated Plaintiff's Tanakh (Jewish bible). This book was never returned to Plaintiff, and he believes that these Defendants destroyed it.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below.

---

[1] Plaintiff's amended complaint (Doc. 9) named Chaplain Harner as a Defendant. However, Plaintiff thereafter filed a motion (Doc. 21) to dismiss Chaplain Harner from the case, and this motion shall be granted (see Pending Motions section below).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:     Religion**

Plaintiff makes a number of claims alleging that his right to freedom of religion has been violated.  Specifically, Defendants Love, Sutton, and Scheimann inhibited his freedom to practice the religion of his choice when they refused to update his religious status after many requests. Defendant Sutton further prevented Plaintiff from freely practicing his religion when he refused to change Plaintiff's diet to vegetarian, to reflect Plaintiff's belief that the practice of his religion required this diet.  And Defendants Cox and John Doe SSOs prevented Plaintiff from getting his religious status changed when they took his form for the change and did not deliver it to Chaplain Harner.

An inmate is entitled to practice his religion "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir.1990). A rule impinging on that right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.78, 89 (1987). Additionally, the Religious Land Use and Institutionalized Persons Act provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

###### a.    Religious Status

Plaintiff alleges that when Defendants Love, Sutton, and Scheimann refused to change his religious status, they inhibited his ability to practice his religion of choice.  Prison officials may legitimately deny a change in religion where they determine an inmate's professed religious beliefs are insincere.  *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) ("Prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic. Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity.").

It is not clear at this point why these Defendants denied Plaintiff's requests to have his religious status changed.  Plaintiff states that he was listed as a practicing Protestant, when he is in fact Jewish.  This misnomer prevented him from attending Jewish services, and fully practicing his faith.  Whether these Defendants refused to change Plaintiff's listed religion because they did not feel that Plaintiff's request was based on an authentic desire to practice the Jewish faith cannot be determined at this stage.  Further, while it is clear that the denial of Plaintiff's request to have his religion changed burdened his ability to practice that religion, it is possible that these Defendants denied the request based on a compelling governmental reason, such as the safety and security of the institution.  This claim against Defendants Love, Sutton, and Scheimann will proceed so as to give the Court the opportunity to clear up these possible scenarios.

###### b.    Diet

Plaintiff alleges that Defendant Sutton further inhibited his free practice of religion when Defendant Sutton refused to change Plaintiff's diet to a vegetarian one.  Plaintiff states in his

complaint that he made Defendant Sutton aware that he made the request because he believed that his faith required a vegetarian diet, but Defendant Sutton still refused the request.

Observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990) (citing cases). Further, prison officials have violated an inmate's clearly established right to practice his religion, where his requests for accommodation are denied simply because the accommodations are personal to that inmate, instead of applying to the religious group as a whole. *Vinning-El v. Evans*, No. 10-1681, at 4 (7th Cir. Sept. 16, 2011) (discussing *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 834 (1989)). This occurs where a defendant denies an inmate an accommodation because it differs from the beliefs and practices of the religion's leaders. *Id* at 5.

However, only those accommodations that reflect sincere religious beliefs must be granted. *Id*. ("A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself . . . ."). To determine whether a belief is sincerely held, a prison may still "give *some* consideration to an organization's tenets." *Id*. at 6. (the more an individual's practice deviates from the orthodox practices of his faith, the less likely the practice is a sincerely held belief) (emphasis in original).

It is not entirely clear from Plaintiff's complaint why Defendant Sutton denied the request for a vegetarian diet. If it was denied because he did not feel that Plaintiff had a sincerely held belief that his faith required such a diet, there has been no constitutional violation. However, if the denial was based on the tenets of the Jewish faith, and the fact that most practicing Jews do not believe that a vegetarian diet is necessary, then there has been a violation. Accordingly, the Court is unable to

dismiss Plaintiff's claim regarding interference with his religious diet.

### c.   Forms

Plaintiff alleges that, when Defendants Cox and John Doe SSOs took his religious status change form from his mailbox without giving it to Chaplain Harner, they prohibited him from obtaining his religious status change. This, Plaintiff argues, prevented Plaintiff from freely practicing his religion of choice, as only those prisoners who are listed as practicing the Jewish faith can attend Jewish religious services.

As stated above, a defendant's actions that prohibit an inmate from freely practicing his religion will be upheld only where those actions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.78, 89 (1987). Plaintiff does not say why Defendants Cox and John Doe SSOs took his form without giving it to Chaplain Harner. It is likely at this stage that Plaintiff does not know why these Defendants took his form. The fact is that by taking this form, these Defendants made it impossible for Plaintiff to get his religious status changed, which then made it impossible for him to fully practice his faith of choice. If these Defendants took the form without giving it to Chaplain Harner because some legitimate penological interest demanded their interference, then there has been no constitutional violation. However, the Court cannot determine on the pleadings why Defendants Cox and John Doe SSOs took the form, and will not venture a guess. This claim against Defendants Cox and John Doe SSOs will proceed so that the Court can obtain more information concerning this claim.

### COUNT 2:   Property

Plaintiff claims that Defendants Livingston and Fleming took one of his religious books while Plaintiff was being moved to a new cell, and failed to return it. Plaintiff believes that

these Defendants destroyed his book, and brings this claim as one of deprivation of personal property, rather than religious interference.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).

The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Because Plaintiff has a state court remedy, he has no constitutional claim for deprivation of his property in this case. For this reason, this claim against Defendants Livingston and Fleming will be dismissed without prejudice, so that Plaintiff may bring the claim in state court should he wish to further pursue the matter.

**Pending Motions:**

On December 5, 2011, Plaintiff filed three motions with this Court that remain pending: motion for emergency restraining order (Doc. 11), motion to subpoena witnesses (Doc. 12), and motion to block motions to dismiss (Doc. 13). Then on December 16, 2011, Plaintiff filed eight more motions, six of which remain pending: motion to notify (Doc. 16), a second motion for emergency restraining order (Doc. 17), a second motion to subpoena witnesses (Doc. 18), a third

motion for emergency restraining order (Doc. 19), a second motion to block motions to dismiss (Doc. 20), and a motion to amend complaint (Doc. 21).  Plaintiff then filed a motion to notify regarding the Eleventh Amendment (Doc. 27) on December 20, 2011.  Finally, on January 4, 2012, Plaintiff filed a fourth motion for emergency restraining order (Doc. 29).

With the exception of the motion to amend complaint (Doc. 21), which shall be granted, each of these motions shall be denied, as explained below.  Further, Plaintiff is advised that his filing of these numerous and nearly illegible motions has delayed the progress of this case.

### a.      Motion to amend complaint

Plaintiff requests the Court to dismiss Chaplain Harner as a Defendant, stating that Chaplain Harner gave Plaintiff the change of religious affiliation form on the same day Plaintiff filed his amended complaint.  Plaintiff also asks for the dismissal of Defendant John or Jane Doe Administrative Review Board (ARB), as he is pursuing claims against this Defendant in another pending lawsuit.  No other alterations to the complaint were requested.  Plaintiff's motion to amend (Doc. 21) is **GRANTED**.

### b.      Motions for emergency restraining order

Plaintiff's first motion (Doc. 11) claims that he and his fellow inmate witnesses need an emergency restraining order from those named Defendants who work at Menard.  Plaintiff claims that this is necessary because these Defendants are "going to terrorize" Plaintiff and his witnesses, and will retaliate against him.

In his second motion (Doc. 17), Plaintiff claims that Menard staff have been stealing his mail in this case and other cases in order to deny him access to the courts.  Notably, the fact that Plaintiff has successfully filed fourteen motions within the past month in this case alone would indicate any

such efforts have been less than successful.

The third motion (Doc. 19) again claims that all the named Defendants as well as other correctional officers "are going to retaliate over this lawsuit."  Plaintiff requests protection for himself and three named witnesses from the anticipated retaliation.

The fourth motion (Doc. 29) states that Defendants "are going to badger, bribe, and even threaten the [Plaintiff's] witnesses" to prevent them from testifying for Plaintiff and induce them to instead assist Defendants in this matter.  He seeks to restrain the Defendants from engaging in such conduct.

Finally, in each motion Plaintiff requests the Court to send him a copy of the motion for his own records, a request he also made in his first motion to notify (Doc. 16).

A restraining order may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).  Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a restraining order should not issue in this matter at this time.  Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.  As to Docs. 11 and 19, Plaintiff does not state that any threats have been made against him for the filing of this suit, or that he has legitimate reason to believe that adverse actions will be taken.  Plaintiff instead is speculating that the Defendants and other prison staff will act out against him for filing the instant suit.  Likewise, in Doc. 29,  Plaintiff does not claim that witness tampering has occurred, but fears that it may happen in the future.  Plaintiff's allegations of interference with his outgoing mail (Doc. 17) are not supported by the

record in this case to date.

None of the allegations suffice for this Court to issue a restraining order at this juncture. Thus, the motions (Docs. 11, 17, 19, and 29) are **DENIED** without prejudice.

### c.      Motions for subpoena

Plaintiff filed two motions (Docs. 12 and 18) attempting to subpoena the testimony of individuals he believes will be favorable witnesses in this matter.   However, discovery motions are premature at this stage in the litigation under the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 34, 37.   Therefore, these motions (Docs. 12, 18) are **DENIED** without prejudice.  Plaintiff may re-file his motions at a later date in the litigation.

### d.      Motions to block motions

Plaintiff filed these motions (Doc. 13 and 20) in an attempt to block all motions to dismiss filed by the Illinois Attorney General.  Under Federal Rule of Civil Procedure 41, each party has the right to file motions to dismiss an action.  The Court will not bar a party from filing these motions simply because the opposing party feels the dismissal is unwarranted.  These motions (Docs. 13, 20) are **DENIED** with prejudice.

### e.      Motion to notify court that Plaintiff never got court papers

In this motion (Doc. 16), Plaintiff complains that prison staff delayed delivery of documents sent to him by this Court, stole some court papers, and stole his mail.  He requests a copy of several motions, including the instant motion.

Plaintiff's request for the Court to provide him with copies of his motions (Doc. 16) is **DENIED** without prejudice**.**  The Court's usual charge for photocopies is $0.50 per page.  Plaintiff has been granted leave to proceed in forma pauperis in this case without prepayment of fees or

security therefor pursuant to 28 U.S.C. § 1915. *See* Doc. 30. However, fees for photocopies are not among the fees that are waivable pursuant to Section 1915. *See Robinson v. Miscellaneous*, No. 09C0148, 2009 WL 1649697, at *4 (E.D. Wis. June 11, 2009) (citing *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990)) ("Although the plaintiff was granted leave to proceed in the district court as a pauper, that status waives only prepayment of fees and costs and security.... It does not give the litigant a right to have documents copied and returned to him at government expense."). Copies will be provided only upon prepayment of the copying fee accompanied by a request for the document(s) by number.

      **f.**    **Motion to notify regarding Eleventh Amendment**

As with his motion to block motions, this motion (Doc. 27) seeks to prevent Defendants from asserting Eleventh Amendment immunity from suit. Again, each party to a lawsuit has the right to file motions to dismiss an action. FED. R. CIV. P. 41. The Court will not bar a party from filing a motion or asserting a defense simply because the opposing party believes it should not be granted. This motion (Doc. 27) is **DENIED** with prejudice.

**Disposition:**

      **IT IS HEREBY ORDERED** that Defendants **HARNER, JOHN DOE ARB, LIVINGSTON,** and **FLEMING** are dismissed from this action without prejudice. **Count 2** of Plaintiff's complaint is likewise dismissed without prejudice, so that Plaintiff may bring it in state court if he so chooses.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **LOVE, SUTTON, SCHEIMANN,** and **COX** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is

**DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendants (**JOHN DOE SSOs**) until such time as Plaintiff has identified them by name in a properly filed amended complaint.   Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   January 12, 2012**

_____*s/J. Phil Gilbert*_____
**United States District Judge**