IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM O SPIVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. **3:11-cv-00327-JPG-PMF** |
| | ) |
| CHAPLAIN LOVE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are the defendants' motions for summary judgment (Docs. 65, 68) and the plaintiff's response (Docs. 76, 80-81) thereto. Also before the Court are the plaintiff's (Docs. 79, 90) motions for summary judgment and the defendants' (Docs. 118-19) responses thereto. For the following reasons, it is recommended that the defendants' motions for summary judgment (Docs. 65, 68) be denied and the plaintiff's (Docs. 79, 90) motions for summary judgment be denied.

I.   FACTS

The plaintiff, William O. Spivey, is presently an inmate at Menard Correctional Center ("Menard"). Spivey has been transferred between three different correctional facilities under the jurisdiction of the Illinois Department of Corrections during the relevant time of the allegations in the complaint. Spivey was an inmate Centralia Correctional Center ("Centralia") from March 11, 2010 to May 10, 2010, Pinckneyville Correctional Center ("Pinckneyville") from May 10, 2010 to February 16, 2011, and Menard Correctional Center ("Menard") from February 16, 2011 to present day. In its initial screening order (Doc. 32), the Court summarized the facts as they pertain to the remaining claims as follows:

1

   Plaintiff was transferred to Centralia Correctional Center on March 11, 2010.  Sometime between that date and May 10, 2010, Plaintiff requested that Defendant Love, the prison chaplain, change Plaintiff's religious status which had been incorrectly noted in Plaintiff's file as Protestant, when Plaintiff is in fact Jewish.  This request was ignored by Defendant Love.

   Plaintiff was transferred to Pinckneyville Correctional Center on June 9, 2010.  Sometime between that date and February 16, 2011, Plaintiff requested that Defendant Sutton, the prison chaplain, change his religious status, which was still incorrectly noted as Protestant.  This request was denied.  Plaintiff also asked Defendant Sutton to change his diet to a vegetarian diet to accommodate his religion, but Defendant Sutton refused this request, saying he could not make the change until Plaintiff's religious status had been changed.  Plaintiff sent requests for intervention to Defendant Scheimann, the prison rabbi, but these requests went unanswered.

   Plaintiff was transferred to Menard Correctional Center on February 16, 2011.  Sometime after that date, Plaintiff notified Chaplain Harner that he still needed his religious status changed.  Chaplain Harner sent Plaintiff a form to fill out. Plaintiff filled out this form, and put it in his mailbox.  Defendants Cox and John Doe Second Shift Officers (SSOs) collected this form, but apparently did not give it to Chaplain Harner.  Chaplain Harner later came to Plaintiff's cell and said he would "take care of" the matter of getting Plaintiff's religious status changed, but nothing was done.

   Plaintiff was then moved to a new cell.  In the process of the move, Defendant Livingston and Defendant Fleming confiscated Plaintiff's Tanakh (Jewish bible).  This book was never returned to Plaintiff, and he believes that these Defendants destroyed it.

## II.  PROCEDURAL HISTORY

On December 5, 2011, Spivey filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against nine named defendants. Doc. 9.  On January 17, 2012, the Court conducted preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 32.  In that order, the Court dismissed one of two counts of the complaint and four defendants. *See id.* at 12.  The Court found that Spivey stated a First Amendment (Free Exercise Clause) / Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim in Count 1 of the complaint against Chaplain Love, Chaplain Sutton, C/O Cox, Rabbi Scheimann, and a John Doe defendant. *See id.* at 4-7.

2

### III.  DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jursidiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO

at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### A. The Defendants' Motions for Summary Judgment (Docs. 65, 68)

The defendants argue that Spivey failed to properly exhaust a grievance with respect to the remaining claim in this litigation. In support, the defendants have provided the affidavit of Sherry Benton, an ARB board member. *See* Doc. 66-1 at 1-4. Ms. Benton attests that the ARB received three grievances from Spivey related to the allegations in the complaint concerning defendants Love and Sutton. *See id*. The defendants have attached 11 pages of grievances and

responses to those grievances as an exhibit to the (Doc. 65) motion for summary judgment. *See id*. at 5-16. The exhibit consists of the following:

1. A grievance dated 7/31/2010 and received by the ARB on 8/11/2010. *See id*. at 5-7. The relevant allegations of this grievance complain about getting the runaround from Chaplain Love and Rabbi Scheimann regarding changing the status of his religion in IDOC records from Protestant to Reform Judaism. *See id.*
2. Return of Grievance or Correspondence from the ARB dated 8/20/2010 concerning the grievance received by the ARB on 8/11/2010. *See id*. at 8. The grievance was returned to Spivey because it was not submitted in the timeframe outlined in 20 Ill.Admin.Code § 504.810 (60 days). *See id*.
3. A grievance dated 11/14/2011 and received by the ARB on 11/30/2011. *See id*. at 9-12. This grievance primarily complains about a disciplinary report issued to Spivey on 2/2/2011, and concerns several non-defendant correctional officers. In another part of the grievance, Spivey complains generally that prison Chaplains have refused to change IDOC records in order to reflect that he practices American Reform Judaism. *See id*. at 10.
4. Return of Grievance or Correspondence from the ARB dated 12/9/2011 concerning the grievance received by the ARB on 11/14/2011. *See id*. at 13. The grievance was returned to Spivey because he did not provide a copy the Grievance Officer and Chief Administrative Officer's report at step two of the grievance process. *See id*. The return correspondence also indicates that Spivey did not complain to the ARB within the allowable timeframe of outlined in 20 Ill.Admin.Code § 504.810 (60 days). *See id*.
5. A grievance dated 3/25/2012 and received by the ARB on 3/27/2012. *See id*. at 14-15. The relevant allegations of this grievance complain about Chaplain Harner throwing away his change of religious affiliation forms away.
6. Return of Grievance or Correspondence from the ARB dated 4/3/2012. *See id*. at 16. The grievance was returned to Spivey because he did not provide a copy the counselor's response at step one of the grievance process and the Grievance Officer and Chief Administrative Officer's report at step two. *See id*.

Grievances must be filed within 60 days of the incident. *See* 20 Ill.Admin.Code § 504.810. A prisoner is required to strictly follow all rules established by the confining authority. *See Dole*, 438 F.3d at 809.

Spivey has submitted evidence in response in the form of his own affidavit. *See* Doc. 81 at 4-5. In the affidavit, Spivey attests that he filed three grievances while he was an inmate at Centralia from March 11, 2010 to May 10, 2010. *See id*. at 4. The affidavit states that Spivey

5

sent two of the grievances regarding Chaplain Love and Rabbi Scheimann to Segregation Counselor, Jason Fallert, and one grievance to the ARB during his time at Centralia. *See id*. Spivey believes these grievances were thrown away because he never received any correspondence regarding them. *See id*. The affidavit also states that he grieved the alleged refusal by Chaplain Sutton to change Spivey's religious affiliation and diet after Spivey was transferred to Pinckneyville on May 10, 2011. *See id*. Spivey swears that Mr. Lutz, a Pinckneyville Grievance Counselor, must have thrown the grievances away because he never received any confirmation that these grievances made it into the system. *See id*. Finally, it is stated in the affidavit that Spivey continued to file grievances regarding Rabbi Scheimann's refusal to change IDOC records to reflect Spivey's religious affiliation after he was transferred to Menard on February 16, 2011. *See id*. at 5. The affidavit states that he filed the grievances within the 60-day timeframe outlined by 20 Ill.Admin.Code § 504.810. *See id*. at 4.

On July 9, 2012, the Court found that genuine issues of material fact existed, and an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was necessary. *See* Doc. 87.

### B. Evidentiary Hearing

An evidentiary was held on August 30, 2012. *See* Doc. 130. The Court heard evidence in the form of Spivey's own testimony. Spivey repeated the allegations provided in his affidavit regarding the failures of prison staff at the institution level to respond to his grievances. Spivey was able to provide detailed answers to questioning by the Court, and there was no reason to question his credibility of his statements. Further, the defendants did not challenge Spivey's credibility of Spivey's testimony.

C. <u>Analysis</u>

The plaintiff is only required exhaust administrative remedies that are actually available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citing 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001)); *see also Dale*, 376 F.3d at 656; *Dole*, 438 F.3d at 808-11. If it is evident that prison officials threw away or lost Spivey's grievances, then administrative remedies were unavailable to him. *See, e.g., Dole*, 438 F.3d at 812 (finding that exhaustion was unavailable to pro se prisoner who claimed to have filed a grievance that IDOC prison officials had no record of). Spivey's evidence and testimony indicate that he attempted to exhaust administrative remedies, but prison staff was not entirely responsive to his grievances. The credibility of Spivey's statements has not been challenged.[1] It would be inappropriate for the Court to conclude that the defendants have met their burden of proof by a preponderance of the evidence in this situation. Accordingly, it will be recommended that the defendants' (Docs. 65, 68) motions for summary judgment be denied.

The circumstances of this case are illustrative of the all-to-common scenario in cases involving prison institutions under the authority of the IDOC of failed attempts by defendants in prisoner litigation to successfully litigate the failure to exhaust administrative remedies defense. Counsel for the defendants is hardly to blame for these failures. Rather, it is a reflection of the negligent handling of prisoner grievances within the prison institutions.

With the possible exception of the ARB at step three, it appears as if there is no documented system for tracking grievances as they make their way through the various phases of

---

[1] The cumulative counseling summary submitted by the defendants tends to bolster Spivey's statements that he attempted to engage the grievance process at the institutional level. *See Spivey v. Chapman, et al.*, No 11-329-JPG-PMF (S.D.Ill., Aug. 31, 2012) (Exhibit (Doc. 86 at 15-20)).

[2] The structure of the present system gives prisoners the ability to raise the inevitable accusations regarding improper motivations by prison staff handling their grievances. Such

7

exhaustion. Under the present system, a grievant must put his faith in prison staff[2] to deliver the grievance to the appropriate location without receiving any type of return receipt verifying that the grievance had been delivered successfully. When the prisoner does not hear anything regarding the grievance, he must beg prison staff for morsels of information regarding its status (all of this while the 60-day clock for filing grievances is ticking). If the prisoner is fortunate enough to get a response from his counselor at step one, he must restart the process of relying on prison staff to get his grievance to the right place, again absent any verification of receipt. The present system causes loads of unnecessary confusion among both the grievant and the prison staff involved in processing the grievances. In addition, the absence clear information regarding what happened to a particular grievance makes defendant counsel's task of meeting their burden of proof on the exhaustion defense next to impossible.

It would seem apparent that this mass confusion could be eliminated by the implementation of a basic grievance tracking and receipt system. For instance, every time a grievance is placed into the system, a grievance number could be assigned and an immediate return receipt issued to the grievant. If a receipt is not received shortly after delivery, the grievant will know much earlier on that something has failed and follow-up is required. Once a receipt is issued, the grievant could then refer prison staff to an identifiable grievance on follow-up inquiries. The institutions could store information about the grievance, including possibly an electronic copy of the grievance, in an easily-accessible database. When litigation is started, these business records could be compiled into an understandable format that would clearly

---

[2] The structure of the present system gives prisoners the ability to raise the inevitable accusations regarding improper motivations by prison staff handling their grievances. Such accusations are not always unbelievable due to the inherent tension that exists for obvious reasons between prisoners and their keepers. The existence of this paradigm, if anything, tends to work against the defendant's ability to meet their burden of proof.

demonstrate when and whether or not the litigant followed all procedures. This Court does not pretend to comprehend the administrative difficulties involved with implementing such a system, but it would certainly seem to benefit the long-term interests of the State of Illinois and prisoners seeking to redress grievances.

### D. Plaintiff's Motions for Summary Judgment (Docs. 79, 90)

Spivey has filed two motions for summary judgment on the merits of his case. "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...". FED. R. CIV. P. 56(c)(1)(A).

The defendants have pointed out in their responses that the plaintiff's (Docs. 79, 90) motions fail to cite to any materials in the record, as required by Rule 56. The Court agrees. It is, therefore, recommended that the plaintiff's (Docs. 79, 90) motions for summary judgment be denied.

### E. Unknown Defendant(s)

On July 25, 2012, the Court denied an attempt by Spivey to amend his complaint in order to add 13 additional defendants to this case. *See* Doc. 103. In that order, the Court explained the procedural history regarding an unknown defendant and the reasons for denying Spivey's motion to amend as follows:

> In its initial screening order, the Court concluded that Spivey stated a First Amendment Free Exercise/RLUIPA claim against defendants Cox and unknown North-2 House, Second Shift Officers ("John Doe SSOs") when they allegedly took Spivey's change of religious affiliation form and did not give it to Chaplain Harner. *See* Doc. 32 at 7. Because the Court could not determine why C/O Cox and the John Doe SSOs did not deliver the form, the claim continued against them. *See id*. The Court stated that service will not be made on the John Doe SSOs until such time that Spivey identified them in a properly filed amended complaint. *See id*. at 13.
> It was assumed that Spivey would conduct some initial discovery to determine exactly who took the form from Spivey on the day in question. After all, Spivey cannot state a claim pursuant to 42 U.S.C. § 1983 without alleging that a defendant was personally responsible for a constitutional violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Instead, it appears to the Court that Spivey has just compiled a list of every correctional officer that he could think of and proposed adding them as defendants in this case. The Court will not oblige.
> It would be very difficult to imagine a scenario where more than two correctional officers would be responsible for delivering a single piece of mail. Here, Spivey has named 13 individuals he says are responsible for delivering it. Surely, this is not correct. Nonetheless, if Spivey can come forward with a properly filed amended complaint by August 25, 2012 with facts demonstrating one or two additional defendants were, upon information and belief, personally involved in the taking of the religious affiliation form, they can still be added to this lawsuit.

*Id*.

As of the date of this report and recommendation, Spivey has not come forward with an additional motion to amend his complaint seeking to name the one or two additional defendants that were personally involved with the delivery of his change of religious affiliation form. As such, it is recommended that defendant John Doe be dismissed from this action in accord with Rule 4(m) and pursuant to Rule 41(b).

## IV. RECOMMENDATION

For the forgoing reasons, it is recommended that the defendants' (Docs. 65, 68) motions for summary judgment be denied.

It is further recommended that the plaintiff's (Docs. 79, 90) motions for summary judgment be denied.

It is further recommended that defendant John Doe be dismissed from this action in accord with Rule 4(m) and pursuant to Rule 41(b).

**SO RECOMMENDED.**

**DATED: September 14, 2012.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE
