IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM O SPIVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. **3:11-cv-00327-JPG-PMF** |
| | ) |
| CHAPLAIN LOVE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

The following fully-briefed motions are before the Court:

1) Plaintiff William O. Spivey's (Doc. 177) motion for summary judgment;

2) Defendant Rabbi Scheimann's (Doc. 184) motion for summary judgment;

3) Defendant C/O Cox, Chaplain Love, and Chaplain Sutton's (Doc. 193) motion for summary judgment; and

4) Plaintiff Spivey's (Docs. 157, 159, 163, 167, 199, 217) motions for injunctive relief.

For the following reasons, it is recommended that:

1) Plaintiff William O. Spivey's (Doc. 177) motion for summary judgment be granted, in part, and denied, in part;

2) Defendant Rabbi Scheimann's (Doc. 184) motion for summary judgment be granted;

3) Defendant C/O Cox, Chaplain Love, and Chaplain Sutton's (Doc. 193) motion for summary judgment be denied; and

4) Plaintiff Spivey's (Docs. 157, 159, 163, 167, 199, 217) motions for injunctive relief be denied as moot.

1

## I. FACTS

Plaintiff, William O. Spivey, has been transferred between three different correctional facilities under the jurisdiction of the Illinois Department of Corrections ("IDOC") during the relevant time of the allegations in the complaint. Spivey was an inmate Centralia Correctional Center ("Centralia") from March 11, 2010 to May 10, 2010, Pinckneyville Correctional Center ("Pinckneyville") from May 10, 2010 to February 16, 2011, and Menard Correctional Center ("Menard") from February 16, 2011 to present day.[1]

While incarcerated at Centralia, Spivey put in a request to speak to Defendants Rabbi Scheiman, an independent Jewish services provider for IDOC, and Chaplain Love, the prison Chaplain at Centralia, in order to get his religious status changed in IDOC records from Protestant to Reform Judaism. The IDOC allows for certain accommodations for inmates of differing faiths. Spivey wanted his IDOC record updated in order to receive a kosher vegan diet, which is an available alternative diet plan, and in order to receive his Sabbath day off of work at his prison job. Spivey received no response to his request. Sometime after being put in segregation, Spivey filed grievances and continued to make requests to see Rabbi Scheiman and Chaplain Love. His requests went unanswered.

After being transferred to Pinckneyville, Spivey continued to put in requests to speak to Defendants Rabbi Scheiman and Chaplain Sutton, the prison Chaplain at Pinckneyville, in order to get his religious status changed to Reform Judaism. Spivey did manage to arrange a meeting with Defendant Chaplain Sutton. Spivey asked Defendant Sutton to have religious status changed in order to get placed on the alternative diet plan. Spivey asked Defendant Chaplain

---

[1] The record does seem to indicate that Spivey was released on mandatory supervised release or parole for a short period of time January 2013. *See* Doc. 189. However, it appears Spivey is now back at Menard. *See* Doc. 199.

Sutton to relay the information to Rabbi Scheiman. After confirming that the basis for Spivey's request was religion, Defendant Chaplain Sutton informed Spivey that he "can't do nothing about it, and Rabbi Scheiman will not talk to you because you're gay."

After Spivey protested, Defendant Chaplain Sutton concluded the conversation by stating, "You're properly labeled."

Spivey continued to file grievances and requests slips to speak to Defendants Rabbi Scheiman and Chaplain Sutton at Pinckneyville, but he received no response.

After his transfer to Menard, Spivey continued on the same course of filing grievances and requests slips. The Menard prison chaplain, Chaplain Harner, came to visit Spivey one occasion. Chplain Harner requested that Spivey fill out a change of religious affiliation form and send it to him. Spivey gave the form to Defendant C/O Cox, who destroyed the form before giving it to Chaplain Harner. Sometime thereafter, Rabbi Schieman also came to see Spivey at Menard. Rabbi Schieman informed Spivey that he never received the change of religious affiliation form and instructed Spivey to send him another form.

## II.    PROCEDURAL HISTORY

On December 5, 2011, Spivey filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against nine named defendants. Doc. 9. On January 17, 2012, the Court conducted preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 32. In that order, the Court dismissed one of two counts of the complaint and four defendants. *See id.* at 12. The Court found that Spivey stated Religious Land Use and Institutionalized Persons Act and First Amendment (Free Exercise) claims against Chaplain Love, Chaplain Sutton, C/O Cox, Rabbi Scheimann, and a John Doe defendant. *See id.* at 4-7. The John Doe defendant was later dismissed. *See* Doc. 143.

### III. DISCUSSION

The parties have filed cross-motions for summary judgment. "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." *Id*. S*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials..." FED. R. CIV. P. 56(c)(1)(A). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. When considering cross-motions for summary judgment, all inferences are construed in favor of the party against whom the motion under consideration is made. *Rosenbaum v. White*, 692 F.3d 593, 599 (7th Cir. 2012) (citations omitted).

**A. Defendant Rabbi Scheimann's (Doc. 184) Motion for Summary Judgment**

Rabbi Scheiman argues that he is entitled to summary judgment because he is an independent contractor rather than a State employee, and, accordingly, he is not a "state actor" for purposes of 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S .C. § 2000cc *et seq.*, or any other statute. "RLUIPA authorizes relief against 'governments,'" which are defined in the statute as, "(i) a State, country, municipality,

[etc.] ...(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." *Nelson v. Miller*, 570 F.3d 868, 886 (7th Cir. 2009) (quoting 42 U.S.C. § 2000cc–5(4)(a)). Thus, it is fair to conclude that the state action requirement under RLUIPA is nearly identical to §1983's state action requirement. *See, e.g., Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1000, 181 L. Ed. 2d 743 (2012). "To recover damages under § 1983, a plaintiff must establish that a [state actor] was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)).

We start with the principle that truly private conduct, no matter "however discriminatory or wrongful," can never violate the constitution. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (quoting *the Civil Rights Cases*)). However, certain actions by private persons may become actions of the state depending on the facts and circumstances of the case. *See Lugar*, 457 U.S. at 939 (providing that "something more" is required to characterize the actions of a private person as state action and that it varies with the circumstances of each case). The plaintiff bears the burden of not only proving the merits of his case, but also proving that the defendants were personally involved. *See Florer*, 639 F.3d at 922 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

Rabbi Scheiman has come forward with his own affidavit that explains his relationship to the IDOC. *See* Doc. 184-2. He has also attached a portion of the contractual arrangement between himself and the IDOC. *See id*. The affidavit and the contract provide affirmative

5

support for Rabbi Scheiman's position that he had no authority over 1) how IDOC designates the religious affiliation of prisoners, 2) how the IDOC decides to provide a particular diet to a prisoner, and 3) how the IDOC changes the religious affiliation of a prisoner. *See* Doc. 184-2 at 1-2 ¶¶ 4-6.

The burden now shifts to Spivey to come forward with evidence to suggest, at a minimum, that an issue of fact remains for trial as to whether Rabbi Scheiman is a state actor under § 1983 and RLUIPA. *See* FED. R. CIV. P. 56(c). Spivey has filed three affidavits on the record; two from himself and one from a cellmate, John Grothe. *See* Docs. 191, 201, 203. This testimony focuses on the merits of the case rather than support for any argument that Rabbi Scheiman's conduct was state action. *See id*. Construing the evidence liberally, one implication from the provided testimony could be that Spivey believed that some sort of approval was needed from Rabbi Scheiman in order for IDOC records to be updated to reflect his proper religion. In order to find an issue of fact on the state action issue, however, Spivey would have needed to come forward with some evidence, other than subjective beliefs, suggesting that approval was needed from Rabbi Scheiman before IDOC records could be updated to reflect his appropriate religion. This evidence could have taken the form of easily discoverable materials such as a copy of a contract between Rabbi Scheiman and IDOC, testimonial statements from Rabbi Scheiman, testimonial statements from IDOC officials, or something else.

While there is a brief suggestion in the record that Rabbi Scheiman may have acted in a discriminatory manner (*see* Doc. 184-3 at 7) in this case, this conduct is not actionable under § 1983 and RLUPIA unless it can be construed as state action. *See Lugar*, 457 U.S. at 936. Rabbi Scheiman has come forward with evidence demonstrating that his conduct was truly private. *See* Doc. 184-2. Spivey has not come forward with any admissible evidence suggesting that Rabbi

6

Scheiman is a state actor. In this situation, summary judgment is appropriate for the moving party, Rabbi Scheiman. *See Celotex*, 477 at 322-23 (providing that summary judgment is appropriate for the movant "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Because summary judgment will be recommended for Rabbi Scheiman, the undersigned will frame the remaining discussion as if Rabbi Scheiman is no longer a Defendant.

### B. Plaintiff Spivey's (Doc. 177) Motion for Summary Judgment

Plaintiff asserts that he entitled to summary judgment in this case because the remaining Defendants (C/O Cox, Chaplain Love, and Chaplain Sutton) acted with an arbitrary and discriminatory purpose in denying his request to have his religious affiliation changed from Protestant to Reform Judaism in order to receive a kosher diet and his Sabbath day off of work. He states that he has statutory claims under RLUIPA, the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act of 2009 ("the Matthew Shepard Act"), 18 U.S.C. § 249, and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq*. Spivey also states that he has a constitutional claim under the Free Exercise Clause of the First Amendment.

The remaining Defendants do not acknowledge any statutory claim that Spivey may or may not have in this case. When the Court screened the complaint, however, it referred to RLUIPA and cases interpreting the statute. *See* Doc. 32 at 5. The Seventh Circuit has construed § 1983 cases alleging a violation of the Free Exercise Clause to also include a statutory claim under RLUIPA even when a *pro se* plaintiff did not specifically argue that such a violation occurred. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("The plaintiff doesn't mention the Act, but he is proceeding *pro se* and in such cases we interpret the free exercise

7

claim to include the statutory claim. *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009)"). In fact, the Seventh Circuit has adopted a policy that "a prisoner who does not plead a RLUIPA violation specifically, but does allege unconstitutional restrictions on religious practice, states a claim under the statute." *Ortiz*, 561 F.3d at 670. The many motions and notices filed by Spivey in this case also mention a RLUIPA claim. Thus, it is unclear why the remaining Defendants did not address this claim in their (Doc. 196) response to Spivey's (Doc. 177) motion for summary judgment.[2]

While the Court does not doubt that there is a statutory RLUIPA claim in this case, the other statutes mentioned as a basis for relief are much more problematic. The Matthew Shepard Act is a hate-crime statute that does not contain a right to bring civil cause of action. *See* 18 U.S.C. § 249. The Illinois Human Rights Act prohibits unlawful discrimination in employment and higher education, as well as in real estate and other financial transactions. *See* 775 ILCS 5/1-101 *et seq*. The Illinois Human Rights Act does not contain a civil cause of action for prisoners.[3] In various filings, Spivey also mentioned he has a claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb–4 ("RFRA"). As the Seventh Circuit noted in *Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011), however, the U.S. Supreme Court has found RFRA to be inapplicable to the states through the Fourteenth Amendment. *See Vinning-El*, 657

---

[2] The response does not acknowledge the affidavit filed by Spivey on January 25, 2013. *See* Docs. 191. The Defendants should have been aware of the affidavit, as their (Doc. 196) response was filed over ten days later. The Defendants did not object to the affidavit being filed subsequently to the (Doc. 177) motion for summary judgment.

[3] Nor does the Illinois Human Rights Act implicate a liberty internet protected by the due process clause of the Fourteenth Amendment of the U.S. Constitution. *See Franklin v. City of Evanston*, 99 C 8252, 2002 WL 31572137 (N.D. Ill. Nov. 19, 2002) *aff'd*, 384 F.3d 838 (7th Cir. 2004).

F.3d at 594 (citing *Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). Accordingly, the only statutory claim in this case is Spivey's RLUIPA claim.

The Court will address the statutory claim before the constitutional claim because RLUIPA and a free exercise claim may be subject to different legal standards (*see Vinning-El v. Evans*, 657 F.3d 591, 594-95 (7th Cir. 2011)) and the judicial principal of constitutional avoidance (*see Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008)). The Seventh Circuit has summarized the standard for RLUIPA claims as follows:

> RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate "that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Unlike cases arising under the Free Exercise Clause of the First Amendment, this prohibition applies even where the burden on the prisoner "results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a); *compare Cutter* [*v. Wilkinson,* 544 U.S. 709, 732, 125 S. Ct. 2113, 2128, 161 L. Ed. 2d 1020 (2005)] (Thomas, J., concurring) (citing 42 U.S.C. § 2000cc-1(a) for the proposition that RLUIPA applies to rules of general applicability), with *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (noting that in the Free Exercise context "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice"). In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes this prima facie case, the defendants "bear the burden of persuasion on any [other] element of the claim," *id*., namely whether their practice "is the least restrictive means of furthering a compelling governmental interest." *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006).

*Koger*, 523 F.3d at 796. In support of his motion, Spivey has filed his own affidavit (Doc. 191).[4] The affidavit is rife with legal conclusions and other inappropriate and irrelevant attestations. *See*

---

[4] On February 28, 2013, Spivey filed two more affidavits. *See* Docs. 201, 203. These affidavits will not be construed as evidence submitted in support of the (Doc. 177) motion for summary judgment because they were filed subsequent to the Defendants' (Doc. 196) response.

FED. R. CIV. P. 56(c)(4). (providing that an affidavit or declaration used to support or oppose a motion must be made on personal knowledge and set out facts that would be admissible in evidence). The only testimonial facts that can be gleaned from the affidavit are as follows:

1) Spivey's national origin is ½ Israeli American;
2) Spivey's religion is Reform Judaism (American);
3) Spivey's sexual orientation is homosexual;
4) Spivey's gender is transsexual;
5) At all times relevant to this case, IDOC records reflected Spivey's religion as Protestant;
6) The remaining Defendants refused to change Spivey's religious affiliation to Reform Judaism despite numerous requests;
7) Spivey wanted to receive a kosher vegan diet but could not receive an alternative diet due to his religion being recorded as Protestant; and
8) C/O Cox intentionally took and refused to deliver Spivey's religious affiliation form intended for Chaplain Harner.

Doc. 191. Spivey believes this evidence entitles him to summary judgment. *See* Doc. 177.

The remaining Defendants respond by briefly arguing that Spivey failed to meet his initial burden on summary judgment (*see* FED. R. CIV. P. 56(a)). *See* Doc. 196. They did find it appropriate to submit evidence of their own in response to Spivey's motion and affidavit (Doc. 191). Therefore, the above facts of the (Doc. 191) affidavit are effectively undisputed. The remaining Defendants' only argument is that Spivey is not entitled to summary judgment on his Free Exercise claim.

Spivey's undisputed affidavit (Doc. 191) establishes that he sought to have his religious affiliation changed in order to receive a kosher diet, but the remaining Defendants denied his requests. *See* Doc. 191. It is also undisputed that Defendant C/O Cox took and refused to deliver

---

These two affidavits will be considered in opposition to the Defendants' (Doc. 193) motion for summary judgment.

10

Spivey's religious affiliation form intended for Chaplain Harner.[5] *See id*. The Court has no reason to doubt that that Spivey's beliefs are sincerely held. Nor is there any reason to doubt that an arbitrary denial of a diet plan that agrees with sincerely held religious beliefs when the requested diet plan is readily available to other prisoners constitutes a substantial burden to the exercise of Spivey's religion. *See Nelson,* 570 F.3d at 879 (citing *Koger,* 523 F.3d at 799; *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990)). Accordingly, Spivey has established his prima facie RLUIPA case. Because the Defendants have not come forward with evidence that their practice "is the least restrictive means of furthering a compelling governmental interest" (*Koger*, 523 F.3d at 796), Spivey is entitled to summary judgment on this claim. Accordingly, Spivey's (Doc. 177) motion for summary judgment should be granted against the remaining Defendants as to the RLUIPA claim.

While Spivey is entitled to summary judgment on his RLUIPA claim, it should be noted that this Circuit has ruled that RLUIPA does not create a cause of action against state employees in their personal capacity for damages. *See Grayson*, 666 F.3d at 451 (citing *Nelson*, 570 F.3d at 886–89). Spivey can maintain a cause of action under RLUIPA for injunctive relief against the Defendants in their official capacity. *See id*. To obtain the relief, Spivey would need to file a motion for a permanent injunction and demonstrate all of the necessary elements for injunctive relief. *See, e.g., Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (identifying the required elements for the issuance of injunctive relief) (citation omitted).

Next, the Court will consider Spivey's constitutional claim. The Free Exercise Clause of the First Amendment protects a person's sincerely-held religious beliefs from arbitrary

---

[5] It can be inferred from the affidavit that Spivey personally observed Defendant C/O Cox interfering with the delivery of his change of religious affiliation form. This fact could have been easily disputed if C/O Cox had filed his own affidavit.

discrimination by the government. *See Vinning-El*, 657 F.3d at 593-94 (stating that "[s]incere religious beliefs must be accommodated (at least when failure to accommodate a particular belief would amount to discrimination against one sect, or a personal faith) …." and citing *Thomas v. Review Board*, 450 U.S. 707, 713, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir.2005); *Fifth Avenue Presbyterian Church v. New York City*, 293 F.3d 570, 574 (2d Cir. 2002)). As noted in the prior RLUIPA discussion, the Court has no reason to believe Spivey's beliefs were not sincerely held or that Spivey's ability to practice his religion was substantially burdened by the remaining Defendants' refusal to allow Spivey to have his religious affiliation changed. On threshold review, the Court allowed Spivey to proceed on his First Amendment claim because it was not clear whether Spivey's beliefs were sincerely held or why the Defendants refused Spivey's request to have his religious affiliation changed. *See* Doc. 32 at 5-7. Because the Defendant's did not respond to Spivey's (Doc. 177) motion for summary judgment with evidence, these issues remain unresolved. The Court cannot speculate as to why the Defendants refused Spivey's requests. Their reason may be wholly justifiable. On the hand, their reason may have been completely arbitrary.

Despite the curious lack of evidence submitted in support of their request to deny Spivey's (Doc. 177) motion for summary judgment, the remaining Defendants are correct that Spivey is not entitled to summary judgment on the First Amendment claim. Spivey carries the burden of persuasion in proving that the Defendants acted with a discriminatory or arbitrary purpose. *See* FED. R. CIV. P. 56(a). In his affidavit, Spivey testified that he believed the Defendants' motivations were pretextual and discriminatory. *See* Doc. 191. However, "'Rule 56 demands something more specific than the bald assertion of the general truth of a particular

matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'" *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988) (quoting *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983) and declining to consider a conclusory statement contained in an affidavit at the summary judgment stage). *See also* FED. R. CIV. P. 56(c)(4). In conclusion, there is a complete absence of evidence regarding the Defendants' motivations for refusing Spivey's request to have his religious affiliation changed in IDOC records. Thus, Spivey's (Doc. 177) motion for summary judgment should be denied as to the First Amendment claim.

### C. Defendant C/O Cox, Chaplain Love, and Chaplain Sutton's (Doc. 193) Motion for Summary Judgment

The remaining Defendants (C/O Cox, Chaplain Love, and Chaplain Sutton) have moved for (partial) summary judgment[6] on Spivey's First Amendment claim. *See* Doc. 193. Most of the remaining Defendants' (Doc. 193) motion for summary judgment is devoted to highlighting their perception that Spivey has failed to offer any evidence to support his claim. Spivey's evidence consists of his own testimony (*see* Docs. 191, 203), and he has also offered the testimony of a cellmate (*see* Doc. 201). Ironically, it is the remaining Defendants that have failed to offer any evidentiary support for their positions. They periodically refer to a deposition transcript throughout their (Doc. 194) memorandum in support of summary judgment. However, the deposition transcript in question appears to be relevant to another case in this District, *Spivey v. Lt. Chapman*, No. 11-329 (S.D.Ill. 2011), and not relevant to this case.

Even if they had cited to the appropriate deposition transcript, the facts in this case would consist of only Spivey's version of events. His story would suggest that the remaining

---

[6] The movants did not argue that they are entitled to summary judgment on the RLUIPA claim.

Defendants acted in an arbitrary and discriminatory manner in refusing to change his religious affiliation. *See* Docs. 191, 203. In Spivey's undisputed version, he suggests that the remaining Defendants would not change his religion because members of his faith are not permitted to be homosexual. *See* Doc. 191 at 2 (recalling a conversation with Defendant Chaplain Sutton). *See also* Doc. 203 at 1-2. This conduct, if proven, would violate the Free Exercise Clause of the First Amendment. *Grayson*, 666 F.3d at 453-54 (providing that "outright arbitrary discrimination" is prohibited and that "[h]eretics have religious rights"). At the very least, the testimony is enough to raise a genuine issue of material fact for trial. In order to grant the requested relief in the (Doc. 193) motion for summary judgment, the Court would require at least some evidence regarding why the remaining Defendants took the steps they did concerning the events in this case. However, the remaining Defendants have not even offered simple affidavits. Because so many important questions remain completely unresolved, it is not possible to grant the (Doc. 193) motion for summary judgment on the merits of the First Amendment claim.

In addition, the remaining Defendants briefly touch upon an argument that they are entitled to qualified immunity. *See* Doc. 194 at 8-9. Qualified immunity "protects public employees who make reasonable errors in applying even clearly established law." *Vinning-El*, 657 F.3d at 594 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (reiterating this conclusion)). The qualified immunity analysis is two-prong inquiry. *See Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009) (citations omitted). With regard to the first prong, Spivey will need to demonstrate that the defendants conduct violated his constitutional rights. *See id*. The Court has concluded that issues of fact remain as to the merits of the First

Amendment claim. Thus, the Court will proceed to the second prong, which is a question of law. *See id*.

The second prong of the qualified immunity argument asks whether the violated right was clearly established in particularized sense at the time of the alleged misconduct. *See id*. The complete question is "whether, operating under the state of the law as it existed at the time of relevant events, a reasonable officer would have known that the particular action at issue was unlawful." *See id*. at 479 (citing *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir.1992); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (stating that the contours of a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (quotations omitted)); *Hill*, 992 F.2d at 718). Without citing any authority, the Defendants claim that "if they were to be held liable on the facts alleged, it would constitute a heightened standard for what makes the claims against them." *See* Doc. 194 at 5-6. The Court does not doubt that the Defendants would be entitled to immunity if they reasonably believed that Spivey was merely making requests clouded by religious cover in order to cause problems for the prison. *See Vinning-El*, at 594 ("A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than … a prisoner's desire to make a pest of himself and cause trouble for his captors."). As already discussed, the Defendants have not presented any evidence challenging the sincerity of Spivey's beliefs in this case. With regard to the facts as they are construed for purposes of the remaining Defendant's (Doc. 193) motion for summary judgment, there is at least some question as to whether the remaining Defendants acted with a discriminatory pretext in denying Spivey's requests to have his religious affiliation changed. *See* Docs. 191, 203. In this situation, qualified immunity is not available because a reasonable officer would have known that intentional, arbitrary discrimination violated Spivey's

clearly-established right to freely exercise his religion. *See Grayson*, 666 F.3d at 453 (providing that "outright arbitrary discrimination" is prohibited by the Free Exercise Clause of the First Amendment).

### D. Plaintiff Spivey's (Docs. 157, 159, 163, 167, 199, 217) Motions for Injunctive Relief

Spivey has filed six motions for injunctive relief. The topics of these motions are: alleged interference with Spivey's jury trial (Docs. 157, 199), alleged interference with mail related to this case (Docs. 163, 167), a request related to another lawsuit (Doc. 217), and an evidentiary objection (Doc. 159). All of the requests for injunctive relief share one common characteristic in that Spivey seems to be under the impression that the Court can freely issue injunctions on anyone and for anything just by virtue of having a case pending in federal Court. He is gravely mistaken. Injunctive relief is an extraordinary and drastic remedy, and it is only available to bar the Defendants *in this case* from prospectively violating federal law as to the remaining claims *in this case*. *See Davis v. Bedinger*, No. 10-CV-1007, 2013 WL 141719 (S.D. Ill. Jan. 11, 2013) (collecting authority from the U.S. Supreme Court and Seventh Circuit Court of Appeals). Accordingly, the Court cannot enjoin persons that are not defendants in this case, as Spivey requests, with an injunction. His (Docs. 157, 163, 167, 199, 217) motions will, therefore, be denied as moot. To the extent that Spivey requests an injunction for an evidentiary objection in the (Doc. 159) motion for a restraining order, the request is also denied as moot. The proper method of raising this evidentiary issue would be to file a motion *in limine* if and when the Court request that such motions be filed.

The more appropriate course for Spivey to follow with respect to most of the issues he brings in his injunction requests is to attempt to resolve the issue at the institutional level. If that does not work out, Spivey may attempt to bring a new case alleging a violation federal law by

the persons he seeks to enjoin in his injunction requests and file a motion for an injunction in that case.  The scope of this case is limited to Spivey's request to have his religious affiliation changed in IDOC records.  Accordingly, any request for injunctive relief in this case on another topic will most likely be found to be moot.

### IV. RECOMMENDATION

For the forgoing reasons, it is recommended that:

1) Plaintiff William O. Spivey's (Doc. 177) motion for summary judgment be granted, in part, and denied, in part;

2) Defendant Rabbi Scheimann's (Doc. 184) motion for summary judgment be denied;

3) Defendant C/O Cox, Chaplain Love, and Chaplain Sutton's (Doc. 193) motion for summary judgment be granted; and

4) Plaintiff Spivey's (Docs. 157, 159, 163, 167, 199, 217) motions for injunctive relief be denied as moot.

It is further recommended that the judgment be entered in favor of Defendants Rabbi Scheimann and against Plaintiff William O. Spivey on all claims at the conclusion of this case. Furthermore, judgment may be entered at the conclusion of this case in favor of Plaintiff William O. Spivey and against C/O Cox, Chaplain Love, and Chaplain Sutton on the Religious Land Use and Institutionalized Persons Act claim. If this recommendation is adopted in its entirety, this case will proceed to trial on the First Amendment (Free Exercise Clause) claim.

SO RECOMMENDED.

DATED: March 21, 2013.

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE