IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM O. SPIVEY,<br><br>       Plaintiff,<br><br>vs.<br><br>CHAPLAIN LOVE, CHAPLAIN SUTTON,<br>C/O COX, and RABBI SCHEIMANN,<br><br>       Defendants. | Case No. 11-cv-327-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("R & R") (Doc. 219) of Magistrate Judge Philip M. Frazier recommending that the Court (1) grant in part and deny in part plaintiff William O. Spivey's motion for summary judgment (Doc. 177); (2) grant defendant Rabbi Scheimann's motion for summary judgment (Doc. 184); (3) deny defendants C/O Cox, Chaplain Love, and Chaplain Sutton's motion for summary judgment (Doc. 193); and (4) deny Spivey's motions for injunctive relief (Docs. 157, 159, 163, 167, 199 & 217) as moot. For the following reasons, the Court adopts in part and rejects in part the R & R.

**1. Alleged Facts**

Spivey, an inmate in the Illinois Department of Corrections ("IDOC"), identifies his religion as Reform Judaism. During the course of the relevant allegations in the instant complaint, he was incarcerated in three different IDOC facilities as follows: (1) Centralia Correctional Center ("Centralia") from March 11, 2010, to May 10, 2010; (2) Pinckneyville Correctional Center ("Pinckneyville") from May 10, 2010, to February 16, 2011; and (3) Menard Correctional Center ("Menard") from February 16, 2011, to the present. It appears Spivey was

paroled for a short period of time in the beginning of 2013, but he is again presently incarcerated in Menard.

The allegations in Spivey's complaint concern his attempts to update his IDOC records to correctly reflect his religion as Reform Judaism. Because Spivey's records incorrectly reflected his religion as protestant, IDOC refused to accommodate his diet or religious holidays. Specifically, he alleges he was denied a religious kosher vegan diet and days off work to observe his Sabbath.

While incarcerated at Centralia, Spivey made requests to Love, Centralia's chaplain, and Scheimann to change his religious affiliation to Reform Judaism. Scheimann is a rabbi, associated with the Lubavitch Chabad House of Illinois, who provides services to IDOC's Jewish population through a contract with the State of Illinois. Spivey did not receive a response from his requests to Love or Scheimann. Spivey believes his requests were denied because he is gay and transsexual.

After his transfer to Pinckneyville, Spivey continued to make requests to speak to Scheimann and Sutton, Pinckneyville's chaplain, for the purpose of changing his religious affiliation. At Pinckneyville, Spivey was denied a kosher vegan diet because his records did not correctly reflect his religion as Reform Judaism. Sutton ignored Spivey's requests and told him Scheimann would not change his religious status because Spivey was "gay and a transsexual." Doc. 177, p. 2. After Spivey explained that IDOC had improperly recorded his religion, Sutton told Spivey he was "properly labeled." *Id*.

After his transfer to Menard, Scheimann continued to ignore Spivey's multiple requests to change Spivey's religious affiliation. While at Menard, Spivey also alleges that Cox stole a change of religious affiliation form out of a letter that Chaplain Harner, Menard's chaplain, had

2

sent to Spivey. It does appear, however, that Chaplain Harner sent Spivey another change of religious affiliation form that Spivey later received.

Spivey originally filed his complaint pursuant to 42 U.S.C. § 1983 on August 31, 2010, under case number 10-cv-689-JPG, listing unrelated causes of action against multiple defendants. The Court severed the unrelated claims, and this case is one of those severed claims. Still pending in this case are Religious Land Use and Institutionalized Persons Act ("RLUIPA") and First Amendment free exercise claims against Love, Sutton, Cox, and Scheimann. The Court will now consider the R & R's recommendations.

### 2. R & R Standard

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Ordinarily, arguments raised for the first time in an objection to a report and recommendation are waived. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *Divane v. Krull Elec. Co.*, 194 F.3d 845, 849 (7th Cir. 1999). "Failure to raise arguments will often mean that facts relevant to their resolution will not have been developed; one of the parties may be prejudiced by the untimely introduction of an argument . . . . Additionally, a willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files

objections to them." *Melgar*, 227 F.3d at 1040. The Court will first turn to consider the R & R with respect to the parties' cross motions for summary judgment.

### 3. The Parties' Motions for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

Where the nonmovant bears the burden of persuasion, "the movant's initial burden 'may be discharged by 'showing' – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Modrowski v. Pigatto*, No. 11-1327, 2013 WL 1395696, at *2 (7th Cir. Apr. 8, 2013) (citing *Celotex*, 477 U.S. at 325). In such a case, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Modrowski*, 2013 WL 1395696, at *2 (citing *Celotex,* 477 U.S. at 323).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material

fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

### a. Scheimann's Motion for Summary Judgment

The R & R recommends this Court grant Scheimann's motion for summary judgment because Scheimann is not a state actor and cannot be held liable under § 1983 or RLUIPA. Spivey has not asserted that Scheimann is a state actor and has not objected to this recommendation. After a review of the record, the Court finds this recommendation is not clearly erroneous. Accordingly, the Court adopts this portion of the R & R and grants Scheimann's motion for summary judgment. As no claims remain pending against Scheimann, the Court further dismisses Scheimann from this case. Now, the Court will consider the motions for summary judgment concerning the claims against the remaining defendants Cox, Love, and Sutton (hereinafter, collectively "Defendants").

### b. Spivey's Motion for Summary Judgment

Spivey filed his motion for summary judgment arguing he is entitled to summary judgment on his remaining RLUIPA and First Amendment free exercise claims. In support of his motion, Spivey attached his own affidavit. In their response to Spivey's motion for summary judgment, Defendants do not attach any evidence to contradict Spivey's version of events or acknowledge Spivey's affidavit. Rather, they argue that Spivey's motion is deficient because he makes no citations to the record, fails to present any undisputed material facts, and "merely reiterates the statements made in his Complaint." Doc. 196, p. 2. The Court, however, notes this

5

district has no requirement that a party present undisputed material facts in a motion for summary judgment. Further, Spivey does not merely reiterate the allegations in his complaint, but provides an "affidavit" in support of his claims. In their objection, Defendants argue the R & R erred in relying on Spivey's affidavit, which was actually a declaration, because it was "rife with legal conclusions, case law, and requests various relief." Doc. 221, p. 5.

### i. Spivey's "Affidavit"

The Court will first consider Defendants' argument that the R & R erred in relying on Spivey's "affidavit." As the R & R noted, Spivey's "affidavit," which Defendants correctly note is technically a declaration, contains legal conclusions and irrelevant attestations. However, Spivey's declaration does provide some facts relevant to his motion for summary judgment, as follows: (1) Spivey is half Israeli-American, identifies his religion as Reform Judaism, and identifies as homosexual and transsexual; (2) IDOC records indicate Spivey's religion as Protestant; (3) the Defendants refused to change Spivey's religion from Protestant to Reform Judaism despite his requests; (4) IDOC denied Spivey a kosher vegan diet because IDOC records indicated his religion was Protestant; and (5) Cox intentionally removed a change of religious affiliation form from a letter Chaplain Harner sent to Spivey (Doc. 191).

The Court notes that Defendants failed to object or raise this argument in their response to Spivey's motion for summary judgment. Accordingly, that argument is waived. However, even if the Court were to consider Defendants' argument, the R & R did not err in relying on Spivey's declaration. Courts must liberally construe *pro se* pleadings. *McCormick v. City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000). As such, while Spivey's declaration was full of legal conclusions and irrelevant material, the R & R specified which statements were testimonial facts

and there is no indication that it relied on any other statements.  Accordingly, the Court declines to disregard Spivey's declaration in its consideration of his motion for summary judgment.

### ii. RLUIPA Claim

The R & R recommends that Spivey's motion for summary judgment be granted with respect to his RLUIPA claim.  RLUIPA prohibits a prison from

> imposing a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The statute provides that a claimant may receive "appropriate relief." 42 U.S.C. § 2000cc-2(a).  Sovereign immunity, however, prohibits RLUIPA suits against state officials in their official capacities for money damages.  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011); *Maddox v. Love*, 655 F.3d 709, 717 (7th Cir. 2011).  The Seventh Circuit has further held that "RLUIPA does not allow for suits against prison officials in their individual capacities."  *Id*.  Ultimately, prisoners may "enforce the statute through injunctive or declaratory relief."  *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir. 2003).

Defendants' objection contends the R & R was erroneous, arguing Spivey's RLUIPA claim did not survive threshold review and raising new arguments that Spivey is not entitled to summary judgment on his RLUIPA claim.  Defendants, however, waived their newly-raised arguments for failing to raise them in their response to Spivey's motion for summary judgment.  *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (arguments not made before a magistrate judge are normally waived").  The Court will consider Defendants' argument that Spivey's claim did not survive threshold review.

The Court finds that Spivey's claim contains an RLUIPA claim. Defendants' claim to the contrary is implausible for several reasons. First, Defendants have no basis for assuming that the RLUIPA claim did not survive threshold review. The Court indicates in its threshold order if a claim does not survive, as it did, for example, when it explained why Spivey's due process claim did not survive. Nowhere in its threshold review did the Court dismiss Spivey's RLUIPA claim. The case law is clear that *pro se* prisoner free exercise actions include a claim under RLUIPA even if the prisoner does not specifically invoke RLUIPA in his complaint. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (noting plaintiff did not mention RLUIPA, "but he is proceeding *pro se* and in such cases we interpret the free exercise claim to include the statutory claim"); *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009) (a prisoner who does not plead a RLUIPA violation specifically, but does allege unconstitutional restrictions on religious practice, states a claim under the statute). Most notably, in his R & R dated September 14, 2012, Judge Frazier indicated "[t]he Court found Spivey stated a First Amendment (Free Exercise Clause)/[RLUIPA] claim in Count [One]." Doc. 133, p. 2. Thus, the Defendants have had notice that an RLUIPA claim exists in this case and have failed to object to its inclusion.

Regardless of whether Spivey has carried his burden, the Court must deny Spivey's motion for summary judgment with respect to his RLUIPA claim against defendants Love and Sutton. This Court's jurisdiction is limited to "actual, ongoing controversies." U.S. Const. art. III, § 2. "'[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome,' the case is (or the claims are) moot and must be dismissed for lack of jurisdiction." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 626 (7th Cir. 2007). Any prisoner claim for injunctive relief against the first prison is moot upon the

prisoner's transfer to a second prison "unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). The "capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

Here, Spivey may not recover money damages under RLUIPA and thus he is limited to injunctive or declaratory relief. However, the alleged constitutional violations against Love and Sutton took place while Spivey was incarcerated at Centralia and Pinckneyville. He has since been transferred to Menard. He has made no suggestion and the Court has no reason to conclude that Spivey is likely to be retransferred to Centralia or Pinckneyville and again be subject to constitutional violations. Accordingly, Spivey's RLUIPA claim against Love and Sutton appears to be moot because he is no longer incarcerated in the prisons in which these defendants are employed and the relevant allegations arose. Accordingly, the Court must reject the R & R in that respect and deny Spivey's motion for summary judgment with respect to his RLUIPA claim against defendants Love and Sutton. The allegations involving Cox, however, arose at Menard, and Spivey is still incarcerated at Menard. Accordingly, the Court will now consider Spivey's RLUIPA claim against Cox.

In his affidavit, Spivey asserts that Cox removed a change of religion form from an envelope Chaplain Harner had sent to Spivey. Cox does not attach any evidence, such as an affidavit, to refute this assertion. Spivey argues that Cox's actions prevented Spivey from changing his official religious affiliation in his IDOC records and thus prevented him from receiving his religious kosher vegan diet which imposed a substantial burden on his religious

9

exercise. Based on these facts, Spivey argues he is entitled to judgment as a matter of law on his RLUIPA claim against Cox.

RLUIPA establishes a standard different from that encompassed under the First Amendment's free exercise clause. *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) (citing *Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011)). In response to Supreme Court decisions, such as *Employment Division v. Smith,* 494 U.S. 872 (1990), holding "that laws of general applicability that incidentally burden religious conduct do not offend the First Amendment," *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006), RLUIPA created a "'more searching standard' of review of free exercise burdens than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness." *Id*. (quoting *Madison v. Riter*, 355 F.3d 310, 314 (4th Cir. 2003)). Congress further required that RLUIPA "be construed 'in favor of broad protection of religious exercise.'" *Id*. (quoting 42 U.S.C. § 2000cc-3(g)).

Under RLUIPA "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Spivey's request to receive a kosher vegan diet qualifies as "religious exercise" under RLUIPA. *See Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009).

Next, the Court must determine whether the burden on Spivey's religious exercise was substantial. RLUIPA does not set a definition for "substantial burden;" however, the Seventh Circuit Court of Appeals has held that "'in the context of RLUIPA's broad definition of religious exercise . . . a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.'" *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (quoting *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003)). Free exercise is "effectively

impracticable" when the government "'put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Id.* (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)).

Spivey asserts his inability to change his religious preference in his prison records has completely prevented him from eating a religious diet and receiving other benefits that flow from IDOC's religious affiliation designation in his records. However, it is not clear that Cox's action of removing a change of religious affiliation form from Spivey's mail made his ability to exercise his religion effectively impracticable. Spivey has not suggested that he could not get this change of religion form from any other source or that he could not change his religion in his records in any other way. To the contrary, he believed he could change his religion by asking the other defendants to do so without the need for a change of religious affiliation form. Construing the facts in the light most favorable to Cox, the Court finds that Spivey is not entitled to summary judgment against Cox on his RLUIPA claim. To that extent, the Court rejects the R & R and denies Spivey's motion for summary judgment. The Court will now turn to Spivey's motion for summary judgment with respect to his First Amendment claim.

### iii. First Amendment Free Exercise Claim

Spivey asserts he is entitled to judgment as a matter of law on his First Amendment free exercise claim for the same reasons he is entitled to judgment as a matter of law on his RLUIPA claim. The R & R recommends this Court deny Spivey's motion for summary judgment because of the lack of evidence regarding the Defendants' motivation. The Court has not received an objection to this portion of the R & R. As such, the Court has reviewed this portion of the R & R and finds that it is not clearly erroneous. Accordingly, the Court adopts the R & R to that extent and denies Spivey's motion for summary judgment with respect to his First Amendment free

exercise claim. The Court now consider Defendants' motion for summary judgment on Spivey's First Amendment free exercise claim.

### c. Defendants' Motion for Summary Judgment

Defendants argue they are entitled to judgment as a matter of law on Spivey's First Amendment free exercise claim. Specifically, Defendants argue (1) Love is entitled to judgment as a matter of law because Spivey failed to establish the existence of the elements of his claim; (2) Sutton is entitled to judgment as a matter of law because there is no evidence that Sutton denied Spivey's request for a religious status claim and Spivey did not submit written requests for a change of religion or religious diet pursuant to the regulations; and (3) Cox is entitled to judgment as a matter of law because Spivey failed to make a showing that Cox substantially burdened Spivey's religious practice and there is no evidence that Cox took the change of religious affiliation form. Defendants further argue they are entitled to qualified immunity. In support of their motion and memorandum of law they attach a deposition from another related case. In their objection to the R & R, they attach the correct deposition and explain they erroneously attached a deposition from another case to their motion for summary judgment. This deposition is the only evidence Defendants attach to their motion.

The R & R recommends this Court deny Defendants' motion for summary judgment. Specifically, the R & R points to the lack of evidence, such as affidavits, explaining why "Defendants took the steps they did concerning the events in this case." Doc. 219, p. 14. Further, the R & R recommends the Court not grant Defendants' motion for summary judgment on the grounds of qualified immunity because "a reasonable officer would have known that intentional, arbitrary discrimination violated Spivey's clearly-established right to freely exercise his religion." Doc. 219, p. 16.

Defendants filed their objection to the R & R. They argue the R & R was erroneous because Spivey's contention that his religion was not changed for discriminatory reasons only referred to Scheimann. Also, Spivey's affidavit failed to establish that Defendants' conduct created a substantial burden on Spivey's religious belief or practice. Because Defendants filed an objection to this portion of the R & R, the Court will now undertake a *de novo* review of the Defendants' motion for summary judgment with respect to Spivey's First Amendment free exercise claim.

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." There is no doubt that prisoners are entitled to rights under the First Amendment's free exercise clause, applied to the states by the Fourteenth Amendment's due process clause. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). As such, even in prison "[s]incere religious beliefs must be accommodated (at least when failure to accommodate a particular belief would amount to discrimination against one sect, or a personal faith), but non-religious beliefs need not be." *Vinning-El*, 567 F.3d at 593-94.

Spivey must first establish that his right to practice his religion was burdened in a significant way. *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (citing *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 698 (1989)). "[G]overnment conduct is substantially burdensome 'when it puts substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) (quoting *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008)). In their motion for summary judgment, Defendants have pointed to a lack of evidence to support Spivey's claims. Spivey, however, provided his own affidavit and the affidavit of his cellmate, John Grothe. Viewing the evidence

in the light most favorable to Spivey, the Court will now consider each remaining defendant in turn to determine whether Spivey has presented sufficient evidence from which "a fair-minded jury could return a verdict" in Spivey's favor.

### i. Love

In his affidavit, Spivey explains that after he was transferred to Centralia he requested to talk to Love on March 11, 2010, so that he could ask Love to ask Scheimann to change Spivey's religious status. After Love failed to visit Spivey, Spivey filed a grievance. Thereafter, Love came to talk to Spivey at which time Love told Spivey he would have to talk to Scheimann to have his religious affiliation changed. Sometime during April 2010, Spivey again requested to talk to Love to change his religious affiliation, but his requests were ignored until May 2010. Love again told Spivey that he would have to talk to Scheimann because Love could not change Spivey's religious affiliation. In his motion, Love asserts there is no allegation that Love denied Spivey's request for religious status change. Further, Love argues Spivey has failed to show that his religious exercise was substantially burdened by the alleged denial.

Construing the evidence in the light most favorable to Spivey, the Court finds that Spivey has presented a triable issue of fact. As the Court explained in its RLUIPA discussion, Spivey alleges he was not able to freely exercise his religion because the refusal to accept or the denial of his change of religious status request prevented him from receiving a religious diet. Construing the facts in Spivey's favor, Love told Spivey Love could not change his religious affiliation. However, this assertion is contrary to the regulation, cited by Defendants in their motion for summary judgment, that provides as follows

> Committed persons desiring to designate their religious affiliation after the orientation process or to change their designated religious affiliation shall submit the written request to the facility chaplain. The facility chaplain may refuse to

>change the affiliation if it is determined that the change is being requested for other than religious reasons.

20 Ill. Admin. Code § 425.30(h). Pursuant to this regulation, Love, as the prison chaplain, had authority to change Spivey's religious affiliation. Love has not suggested that he did not have the authority to change Spivey's religious affiliation. Further, he does not suggest that Spivey wanted to change his religious affiliation for purposes other than religious reasons. Rather, the facts, undisputed by evidence from Love, suggest that Love arbitrarily avoided Spivey's requests to change his religious affiliation by ignoring Spivey's requests and suggesting that Scheimann had to change Spivey's religion. Spivey does not challenge the regulation at issue, but suggests that Love did not change his religious affiliation for discriminatory reasons. Love has failed to attach even an affidavit to suggest his reasoning for his failure to change Spivey's religious affiliation. His actions very well may have been for non-discriminatory reasons; however, absent some evidence in this regard the Court cannot speculate as to Love's reasoning. Accordingly, construing the facts in the light most favorable to Spivey, the Court must deny Love's motion for summary judgment.

### ii. Sutton

Spivey alleges that after his transfer to Pinckneyville in June 2010, he put in requests to Sutton asking Sutton to talk to Scheimann so he could change Spivey's religion. Sutton explained he could not change Spivey's diet because Spivey's religious affiliation was incorrect. Sutton further explained that Scheimann, the individual who purportedly had authority to authorize the religious affiliation change, would not talk to Spivey because Spivey was gay and a transsexual. Spivey continued to put in requests to speak to Sutton or Scheiman, but those requests were ignored.

In his motion for summary judgment, Sutton argues the regulations give a chaplain discretion by allowing a chaplain to refuse to change an inmate's religious affiliation "if it is determined that the change is being requested for other than religious reasons." Doc. 194, p. 6. This is a true statement. However, Spivey asserts his request was for religious reasons, and Sutton does not attach an affidavit or other evidence demonstrating he determined Spivey's request was for other than religious reasons. Sutton also argues that Spivey, contrary to the regulation, failed to make a written request and instead requested to talk to Scheimann. Spivey's affidavit, however, asserts that he did make written requests to Sutton and Sutton does not attach evidence to the contrary.

Rather, viewed in the light most favorable to Spivey, Spivey's affidavit suggests that Sutton told Spivey that Scheimann had to change Spivey's religious status. Sutton also told Spivey that Scheimann would not talk to him because of Spivey's sexuality. Through these actions, Sutton made it effectively impossible for Spivey to change his religious status by requiring him to get approval from someone that refused to talk to Spivey. Even if Spivey's sexuality was not in line with Scheimann's or Sutton's religious views, this was not a legitimate reason to deny Spivey's request to change his religious affiliation. *See Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012) ("Heretics have religious rights."). To the contrary, the regulations and Sutton's motion suggest that Sutton did have the authority to change Spivey's religion. Accordingly, Spivey, through his affidavit, has produced sufficient evidence to raise a triable issue.

Sutton has produced no evidence to the contrary. Sutton may very well have had a legitimate penological reason for not changing Spivey's religion, but he fails to offer any evidence to that effect. Accordingly, viewing the evidence in the light most favorable to Spivey

and based on Sutton's lack of evidence, the Court must deny Sutton's motion for summary judgment.

### iii. Cox

After Spivey was transferred to Menard, Chaplain Harner mailed a bulletin to Spivey which was supposed to have included a change of religious affiliation form. At that time Cox was passing out the mail and Spivey alleges Cox stole the change of religious affiliation form out of the envelope. Spivey attaches his own declaration and the declaration of his cellmate, John Grothe, attesting that Cox stole the affidavit from Spivey's mail.

In his motion for summary judgment, Cox argues Spivey fails to establish that Cox's behavior substantially burdened his religious exercise or provide evidence that Cox took Spivey's change of religious affiliation form from Spivey's mail. However, viewing the evidence in the light most favorable to Spivey, Spivey alleges that Cox's actions prevented him from changing his religious affiliation which prevented Spivey from receiving his religious diet. As this Court has explained, this constitutes a substantial burden on Spivey's religious exercise.[1] Further, Spivey has attached his and his cellmate's declarations as evidence that Cox stole the change of religious affiliation form. Cox provides no evidence to the contrary. For these reasons, the Court must deny Cox's motion for summary judgment.

### iv. Qualified Immunity

Defendants finally argue they are entitled to qualified immunity. The qualified immunity inquiry includes two questions: "first whether the plaintiff has a good constitutional claim, and second whether the right in question was 'clearly established' before the contested events." *Vinning-El*, 657 F.3d at 592. Under the second prong, the Court must inquire as to whether "a

---

[1] The Court notes that in considering Spivey's motion for summary judgment it came to a different conclusion. This result is because the Court was required to construe the evidence in the light most favorable to Cox in Spivey's motion for summary judgment. Here, the Court must construe the evidence in the light most favorable to Spivey.

17

reasonable officer would have known that the particular action at issue . . . was unlawful." *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009). A court may undertake to resolve either or both of these questions at its discretion. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 233-42 (2009)).

Defendants' claim of qualified immunity fails. As already explained in this order, on the facts alleged by Spivey, Defendants would have violated his First Amendment right to freely exercise his religion. Further, it was clearly established that prison officials must have a legitimate penological purpose before imposing a substantial burden on an inmate's free exercise of religion, including the provision of a religious diet. *See Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009); *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008). Accordingly, the Defendants are not entitled to summary judgment on the grounds of qualified immunity.

### 4. Spivey's Motions for Injunctive Relief

Spivey has pending six motions for injunctive relief (Docs. 157, 159, 163, 167, 199 & 217) in this case. The R & R recommends this Court deny all six of these motions. The Court has received no objection to this recommendation. As such, the Court has reviewed the R & R and finds that it is not clearly erroneous. Accordingly, the Court adopts the R & R in this respect and denies Spivey's motions for injunctive relief (Docs. 157, 159, 163, 167, 199 & 217). Subsequent to entry of the R & R, Spivey filed another motion for a permanent injunction (Doc. 222). However, because Spivey has failed to succeed on his motion for summary judgment, the Court denies Spivey's motion for permanent injunction at this time.

### 5. Conclusion

For the foregoing reasons, the Court

- **ADOPTS** in part and **REJECTS** in part the R & R (Doc. 219);

- **GRANTS** Scheimann's motion for summary judgment (Doc. 184) and **DISMISSES** Scheimann from this case;

- **DENIES** Spivey's motion for summary judgment (Doc. 177);

- **ORDERS** Spivey to show cause on or before June 7, 2013, why this Court should not dismiss his RLUIPA claim against Love and Sutton for lack of jurisdiction;

- **DENIES** the Defendants' motion for summary judgment (Doc. 193);

- **DENIES** Spivey's motions for injunctive relief (Docs. 157, 159, 163, 167, 199, 217 & 222);

- **DENIES** Spivey's motion for status (Doc. 227) as moot; and

- **RECONSIDERS** *sua sponte* Spivey's motions for appointment of counsel (Docs. 23 & 82) and will attempt to recruit counsel for Spivey for the purposes of trial.

Spivey's RLUIPA and First Amendment free exercise claims remain pending against Love, Sutton, and Cox.

**IT IS SO ORDERED.**

**DATED:** May 10, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
